[No. 9201.  Department One.  April 24, 1911.]

CHARLES H. POTTER *et ux., Respondents,* v. THE CITY OF
SPOKANE, *Appellant,* WAREHOUSE & REALTY
COMPANY *et al., Respondents.*[1]

APPEAL—REVIEW—PLEADINGS—AMENDMENT TO CONFORM TO PROOF.
A somewhat indefinite complaint for damages to property, by reason
of the negligent construction of a fill in a street, will be deemed
amended on appeal to conform to proof, admitted without objection,
that the injury resulted from defective plans of the city, rather
than defective workmanship.

MUNICIPAL CORPORATIONS—IMPROVEMENTS—INJURY TO PROPERTY—
DEFECTIVE PLANS.  Where property was damaged by the collapse of
a fill because of defective plans, the city cannot evade liability by
the fact that the work was done by independent contractors.

Appeal from a judgment of the superior court for Spo-
kane county, Kennan, J., entered April 16, 1910, upon find-
ings in favor of the plaintiffs, after a trial on the merits be-
fore the court without a jury, in an action for damages and
for an injunction.  Affirmed.

*Fred B. Morrill, R. L. McWilliams,* and *V. T. Tustin,* for
appellant.

*Samuel R. Stern,* for respondents Potter.

*Cullen & Dudley* and *Happy, Winfree & Hindman,* for re-
spondent Warehouse & Realty Company.

*Post, Avery & Higgins,* for respondents Huetter *et al.*

FULLERTON, J.—On August 24, 1908, the city of Spo-
kane entered into a contract with the Warehouse & Realty
Company, a corporation, by the terms of which the company
agreed to construct for the city a dry stone fill across a cer-
tain depression in East Sprague avenue, a public street of
the city of Spokane.  The contract provided that the work
should be performed according to certain plans and specifi-

[1]Reported in 115 Pac. 176.

cations described in the contract, and should be under the supervision, direction and control of the board of public works of the city, and its representative, the city engineer; and that, in case of improper construction and noncompliance with the contract, the board had the right to order a partial or entire reconstruction of the work, or to declare the contract forfeited and relet the same to another contractor, and to adjust the differences that should arise between the city and the contractor by reason of the change. Thereafter the Warehouse & Realty Company, with the consent of the city, sublet the contract to one John T. Huetter and one Joseph Zirngibl. The subcontractors entered upon the performance of the work and proceeded therewith until the greater part of the fill was completed. A part of the fill was immediately in front of the property of the respondents, Charles H. Potter and Nellie F. Potter, on which there had been erected a flour mill. The fill at this point spread or bulged out onto the respondents' property, came in contact with the flour mill, and pushed it from its foundations, and otherwise substantially injured the building.

The respondents named above thereupon began this action to have so much of the fill as protruded upon their property abated as a nuisance, and to recover damages for the injury caused to their property by the encroachment of the fill thereon. To the action, both contracting firms as well as the city were made defendants. The negligent acts complained of were set forth in the complaint in the following language:

"That the said defendants disregarding the location of the said south line of Sprague avenue, have erected and have each permitted to be erected an immense fill and improvement of the said Sprague avenue, by laying immense bowlders and rocks and stone constituting said fill and improvement in such a careless and negligent manner as to permit the same to encroach upon the property of the said plaintiffs Potter and wife and occupied by them and their co-plaintiffs, and have so negligently and carelessly permitted said improve-

ment to be made and said stone to be laid as to permit the tremendous weight of said stone and bowlders to lean over and against the said milling property, and thereby create a nuisance and a menace to the safety of said property and making it impossible to carry on the business for which said property was intended."

The defendants answered separately. The answer of Huetter & Zirngibl was in effect a general denial. The answer of the city was a general denial and an affirmative plea to the effect that the Warehouse & Realty Company was an independent contractor, and that the city was not liable for any damage that may have occurred by reason of the negligent performance of the work. The Warehouse & Realty Company answered, seeking to throw the blame for defective work, if any there was, on the subcontractors. Replies were filed putting in issue the affirmative matters in the answer, and a trial was had before the court sitting without a jury. The trial resulted in a judgment in favor of the respondents for damages against the city in the sum of $1,000, and an order requiring the fill to be removed from the respondents' property as a nuisance. No recovery was allowed against the other defendants or either of them. The city appeals.

On the trial of the cause, the respondents introduced, without objection, evidence tending to show that the plan on which the fill was made was faulty, that no matter how careful the manner in which the work was performed, or how closely the plans were followed, the fill would not stand in place, because construction according to the plans did not furnish sufficient cross-binding to hold it. The case was tried chiefly upon this issue, there being little or no evidence on the affirmative of the proposition that the fill collapsed because of defective workmanship; in fact, it was shown that the work was done under the immediate supervision of the city's engineer and inspectors, and the completed portions of the work accepted by them from time to time as the work progressed. It was on this evidence that the court based its

judgment that the city alone was liable for the injury to the respondents' property.

The city first complains that there was no issue on the question whether or not the plan of the work was defective, and that the court erred in holding the city liable upon a judgment founded upon that issue. It argues that the respondents based their right of recovery upon defective workmanship, rather than upon defective plans, and that the evidence of the plaintiff should have been confined to the trial of that question. An examination of the allegations alleging negligence above quoted will disclose that it is not very definite on the question here suggested. It pleads results rather than causes, but we think it sufficiently broad to allow evidence upon both these questions of defective plans and defective workmanship. But if this were not so, we do not find that the city objected at any time to the trial of this issue, and this being so, the complaint will in this court be deemed amended so as to frame the issue.

The principal contention is that the city is not liable to answer for the defect because the work was performed by an independent contractor. Whether both or either of the contracting companies were independent contractors we think may be doubted, but assuming that they were, the city is liable to the respondents in any event. The evidence abundantly showed that the bulging out and collapse of the fill was due to a defect in the plans of the work, and not to defective workmanship. In such a case, the person authorizing the work cannot escape liability for injuries incurred thereby by intrusting the work to an independent contractor. *Kendall v. Johnson,* 51 Wash. 477, 99 Pac. 310; *Seattle Lighting Co. v. Hawley,* 54 Wash. 137, 103 Pac. 6.

Other errors are assigned, but because of the views announced on the questions discussed, they have become immaterial.

The judgment is affirmed.

DUNBAR, C. J., MOUNT, and PARKER, JJ., concur.