[No. 22525. Department Two. September 30, 1930.]

H. W. VAN SLYKE WAREHOUSE COMPANY, *Respondent,*
v. VILTER MANUFACTURING COMPANY, *Appellant.*[1]

*A. N. Corbin,* for appellant.

*Fred G. Clarke* and *Hughes & Hughes,* for respondent.

HOLCOMB, J.—In this action, respondent sued for and recovered damages for the destruction of a warehouse or cold storage building and contents therein owned by it, by a fire alleged to have been caused and set by a workman or person employed by appellant in the installation of cold storage machinery, pipes and equipment, in the building.

The negligence alleged in the complaint is that appellant, through and by its negligence and lack of due care of the workman and servants employed by it, who

[1] Reported in 291 Pac. 1103.

were under the sole and exclusive control of appellant and were, at the time, being superintended by appellant's skilled erector, negligently set fire to the building and thereby totally destroyed the large main part of the building, a structure about fifty feet wide and two hundred feet long, and also burned and destroyed in part the engine room; that a part of the work of erecting the refrigerating machinery and equipment in the building consisted of the placing of iron or metal pipes at places in the building in close proximity to the surface of the wooden walls and/or partitions of the building and to erect and install such pipes as were necessary, that divers joints therein be welded together; that, in installing such pipes, appellant proceeded to weld the joints with an oxy-acetylene, or similar welding torch, and at the place where the fire referred to was started, appellant was, at the time of the starting of the fire, welding a joint or joints in such pipes in that manner at a point in such close proximity to a wooden wall in the building as was unsafe and hazardous to weld in that manner unless some adequate and proper method of shielding the flame and sparks of the torch from the wall of the building was used; that appellant, at that time, well knew that fact; that appellant knowingly, carelessly, and negligently proceeded, at such point, to use such torch and weld the pipes without taking reasonable care or any due or proper precaution whatever to prevent the fire or sparks from the torch setting fire to wall of the building, and, as a result thereof, the same did set fire to the wall and the woodwork of the building and caused the burning and destruction of the building and other property.

For answer to the allegations in the complaint, appellant first denies that the fire loss was caused by its negligence, and, for a first affirmative defense, alleges

that it entered into a contract with F. A. Suren and C. I. Drew, copartners doing business as Suren & Drew, to install and weld the pipes at an agreed price of seven hundred dollars for the work, and alleges that it reserved the right to inspect the same and see that it was installed according to contract. For a second affirmative defense, appellant alleges that, if the fire resulted from any negligence, it was the negligence of respondent in permitting shavings, sawdust and other inflammable material to remain where the same might be ignited and fire result therefrom, and that the fire did not result from the negligence of appellant or of Suren & Drew.

The case was tried to the court without a jury, which made findings and conclusions in favor of respondent and entered judgment accordingly.

Appellant excepted to findings 7 to 10, inclusive, and the two conclusions of law made by the trial court, which conclusions, of course, followed the findings.

A review of the record shows that there was substantial and competent proof to sustain each and every finding made by the trial court. Other material findings necessary to support a recovery are that, on June 5, 1926, respondent entered into a certain written contract with appellant; that, under the terms of that written contract, appellant agreed to furnish, deliver and erect for respondent, in the building described, under the terms and conditions set forth in the contract, the refrigerating and cold storage equipment consisting of machinery, pipes, connections and all other articles as specified in the written contract; that, under the terms of the written contract, respondent agreed to purchase the machinery, equipment, etc., of appellant, and to employ appellant to deliver and erect the same in the building under the terms and conditions specified in the written contract, and to pay appellant

therefor the sum stated in the contract; that, in the contract, appellant was designated as the "contractor;" that the contract, by its express terms, provides as follows:

"ERECTION. A skilled erector to superintend the erection of the machinery and apparatus herein specified will be furnished by contractor."

"LABOR FOR ERECTION. All other skilled and unskilled labor necessary for the erection will be furnished by the contractor."

Another material phase of the case, although not found by the court, is that the evidence shows that the construction of the building which burned was the customary, approved and usual construction for such buildings; that appellant knew that fact, and knew of the nature of the construction when it planned and provided the refrigerating plant and equipment for the building, and contracted with respondent to furnish and install the same in the building and assume the burden of the performance of all duties in connection with the furnishing and installation. It contracted expressly with respondent to furnish and install the refrigerating plant and equipment in that building.

The errors claimed and argued by appellant may be summarized as follows: In refusing to hold Suren & Drew to be independent contractors; in holding that there was negligence on the part of appellant; and. in holding that there was no negligence on the part of respondent.

The last two claims of error are determined by the findings of the trial court upon the issues and the evidence before it. In view of our consistent rule that, where there is substantial and competent evidence to support the findings of the trial court and no preponderance against the same, as is the case here, we will not disturb them, we are concluded thereby.

■ The chief contention of appellant seems to be that Suren & Drew were independent contractors under the testimony of appellant and the court should have so held.

Appellant cites the following cases, defining independent contractors, as sustaining its contention: *Engler v. Seattle,* 40 Wash. 72, 82 Pac. 136; *Kendall v. Johnson,* 51 Wash. 477, 99 Pac. 310; *Cary v. Sparkman & McLean Co.,* 62 Wash. 363, 113 Pac. 1093; *Machenheimer v. Department of Labor and Industries,* 124 Wash. 259, 214 Pac. 17; *Blacken v. Everett Bottling Works,* 137 Wash. 502, 242 Pac. 1102; *Reynolds v. Addison Miller Co.,* 143 Wash. 271, 255 Pac. 110; *Burchett v. Department of Labor and Industries,* 146 Wash. 85, 261 Pac. 802, 263 Pac. 746; 14 R. C. L. 67, 68, 69, 71, 72 and 73. None of those cases are in any way controlling here.

The affirmative defense alleging that the contract was let to Suren & Drew as an independent contract does not allege that respondent was a party to that contract or had any knowledge of it. That renders this case similar to *Wusthoff v. Schwartz,* 32 Wash. 337, 73 Pac. 407, where we said:

"Respondent further insists that it appears that the work was to be done by contractors, and that they were instructed by her not to begin it until appellants had consented; that, if they did not get such consent, they alone are responsible, and that she cannot be held liable for their misconduct. The contractors were, in any event, the agents of respondent, and as such were authorized to do the work. There is no evidence that appellants had notice that the contractors had disregarded respondent's instructions. The agents were sent to the premises to do the very things which they did. They were done within the apparent scope of their authority, and in the absence of any notice to appellants as to the extent thereof. The acts there-

fore became, as to these appellants, those of the principal."

See, also, *Alexis v. Pittinger,* 119 Wash. 626, 206 Pac. 370; 29 A. L. R. 733, where we reaffirmed the doctrine in the *Wusthoff* case. Compare *Bancroft v. Godwin,* 41 Wash. 253, 83 Pac. 189.

A like case was *Schutte v. United Electric Co.,* 68 N. J. Law 435, 53 Atl. 204, where, in a syllabus prepared by the court, the law was announced. The syllabus reads:

"A. contracted with B. to put in a meter to measure the electricity used by him in his house. B. subcontracted the work to C., who exercised an independent employment. Held:

"1. That B., by force of the contract with A., is liable to A. for damages resulting to him from the negligence of C. in doing the work."

We held in *Kendall v. Johnson,* 51 Wash. 477, 99 Pac. 310, that, where the work is inherently or intrinsically dangerous in itself and will necessarily or probably result in injury to third persons, unless measures are adopted by which such consequences may be prevented, and in other like cases, a party will not be permitted to evade responsibility by placing an independent contractor in charge of the work. To the same effect is *Freebury v. Chicago, Milwaukee & Puget Sound R. Co.,* 77 Wash. 464, 137 Pac. 1044. The same general rule is announced in 39 C. J. 1331, 1339.

Under the foregoing authorities, we are convinced that appellant cannot avoid liability under its defense of having let the contract to an independent contractor.

The findings and conclusions amply support the judgment, and it is therefore affirmed.

MITCHELL, C. J., FULLERTON, and MAIN, JJ., concur.